JACK R. NAIDITCH  5847
LAW OFFICES OF JACK R. NAIDITCH, INC.
PO BOX 485
KULA, HAWAI`I 96790
Telephone:  (808) 283-0912

*Counsel for Plaintiffs*
HOSPITALITY FUTURE LABS, LLC and
ADAM SCHRODER

Electronically Filed
SECOND CIRCUIT
2CCV-22-0000081
24-MAR-2022
09:49 PM
Dkt. 1 CMPS

IN THE CIRCUIT COURT OF THE SECOND CIRCUIT

STATE OF HAWAI‘I

| | |
|---|---|
| HOSPITALITY FUTURE LABS, LLC and ADAM SCHRODER | CIVIL NO. |
| Plaintiff, vs. | COMPLAINT; JURY DEMAND; SUMMONS |
| HARRIS RESEARCH, INC., DAN TARATIN, SHELDON YELLEN, RUSTY ARMARANTE, CURT ARNOLD, DOUG SMITH, ED QUINLAN, WILLIAM ZINKE, MELANIE PARKER, JOTHAM HATCH, and DOES 1-25, | |
| Defendants. | |

## **COMPLAINT**

Plaintiffs HOSPITALITY FUTURE LABS, LLC and ADAM SCHRODER

("Plaintiffs"), by and through counsel, assert the following Complaint and demand a trial by jury

on all issues triable here.

### **PARTIES**

1.     Plaintiff Hospitality Future Labs, LLC ("Hospitality") is and at all times relevant

herein was a Hawai‘i limited liability company operating in the County of Maui, State of

Hawai‘i.

## **EXHIBIT A**

2.     Plaintiff Adam Schroder ("Schroder") is and at all time relevant herein was a resident of the County of Maui, State of Hawai'i.

3.     Hospitality and Schroder are sometimes hereinafter referred to collectively as "Plaintiffs".

4.     Upon information and belief, Defendant HARRIS RESEARCH, INC ("HRI") is and was at all relevant times herein a Utah entity registered to do business in the State of Hawai'i and conducting business in the County of Maui.

5.     Upon information and belief, Defendants Dan Taratin ("Taratin"), Sheldon Yellen ("Yellen"), Rusty Armarante ("Amarante"), Curt Arnold ("Arnold"), Doug Smith ("Smith"), Ed Quinlan ("Quinlan"), William Zinke ("Zinke"), Melanie Parker ("Parker") and Jotham Hatch ("Hatch") are and/or were at all relevant times herein a director, officer and/or employee of HRI. The foregoing individual Defendants are sometimes hereinafter collectively referred to as the "HRI Agents".

6.     HRI and the HRI Agents are sometimes hereinafter collectively referred to as "Defendants".

7.     Upon information the HRI Agents, and each of them, authorized and caused HRI to engage in the acts or omissions set forth herein.

8.     On information and belief, Defendants DOES 1-25 ("DOE Defendants") are persons, corporations, partnerships, entities or governmental units, which, in some manner presently unknown to Plaintiffs, are connected by or through the named Defendants or DOE Defendants, or are acting in concert with the named Defendants or DOE Defendants, or aiding and abetting them, and may claim an interest in subject of this matter, but whose true names,

identities and capacities are presently unknown to Plaintiffs or their counsel. Plaintiffs will seek leave of the Court to identify one or more of these DOE Defendants once their true identities and role in this matter become known. Plaintiffs are also unaware of the basis of liability as to DOE Defendants, but believe that their liability arises out of the same general facts as set forth in this Complaint. Plaintiffs will move to amend this Complaint to assert theories of liability against one or more DOE Defendants when they have been ascertained.

## JURISDICTION

9.      The Circuit Court of the Second Circuit has substantive jurisdiction over this action pursuant to Haw. Rev. Stat. Chapters 480 and 482E and each such chapter's administrative rules, 15 U.S.C. 1051 et .seq. (Lanham Act) and common law.

10.      The Circuit Court of the Second Circuit has proper venue of this action pursuant to Haw. Rev. Stat. § 603-36, as the claims for relief arise in the County of Maui, State of Hawai'i.

## FACTUAL BACKGROUND

11.      In 2019, Mr. Schroder, a resident of Hawai'i for more than 10 years, began to consider a purchase of a Chem-Dry franchise on Maui.

12.      Chem-Dry is advertised as the "world's leading carpet and upholstery cleaning service with a network of 3,000 units in over 50 countries serving over 11,000 homes and business a day worldwide".

13.      HRI owns the worldwide Chem-Dry franchise business.

3

14.     In 2019, Mr. Schroder began communicating with one or more HRI Agents, including Quinlan, who is the President of HRI, to learn more about investing in, establishing and operating a Chem-Dry franchise on Maui.

15.     During his communications with HRI Agents, Mr. Schroder occasionally used expletive language. One or more HRI Agents, including Quinlan, who always encouraged Mr. Schroder to speak his mind freely, also occasionally used expletive language when communicating with Mr. Schroder. No HRI Agent ever objected to Mr. Schroder's use of expletive language in 2019. Moreover, representatives of other Chem-Dry franchisees also used expletive language when speaking to Mr. Schroder.

16.     During these 2019 communications, Defendants, through the telephone, email, texts and United States mail and courier service, made affirmative, material representations regarding Chem-Dry's cleaning products, technology, services and franchisee relations.

17.     In 2019, a number of specific Chem-Dry franchise-related documents were sent by Defendants to Mr. Schroder by U.S. mail, courier service and/or by email. These Chem-Dry franchise-related documents were prepared by and sent by one or more of the Defendants as part of an ongoing effort by Defendants to induce Mr. Schroder to invest in a Chem-Dry franchise.

18.     By October 2019, Mr. Schroder and Defendants were exchanging written communications leading up to Plaintiffs securing a Chem-Dry franchise on Maui.

19.     During this time, Mr. Schroder and the various HRI Agents' occasional use of expletive language continued. No HRI Agent complained about their communications with Mr. Schroeder nor informed Mr. Schroder that he was required to discontinue use of expletive language as a condition to enter a franchise agreement with HRI or maintaining a Chem-Dry

franchise, or that their verbal interchange was contrary to Chem-Dry franchisor-franchisee's code of conduct or relations.

20.     Based on representations and inducements made by Defendants, on or around November 5, 2019, Hospitality, a LLC wholly-owned by Mr. Schroder, entered into a franchise agreement (the "Initial Franchise Agreement") together with a number of ancillary contracts for the purpose of securing a Chem-Dry franchise to be located on Maui, which franchise was identified as Chem-Dry Franchise 202041.

21.     For the remainder of 2019 and into 2020, no HRI Agent complained to Mr. Schroder about his occasional use of expletive language.

22.     The Initial Franchise Agreement required HRI to provide Plaintiffs with training through a business coach. The training was designed to assist Plaintiffs in setting up and operating a Chem-Dry franchise in accordance with Chem-Dry procedures.

23.     In 2020, HRI discontinued the services of it business coach previously assigned to assist Plaintiffs pursuant to the Initial Franchise Agreement. Thereafter, Quinlan presented himself and acted as the replacement business coach to Plaintiffs.

24.     In the business coach-franchisee relationship, open, frank, and uninhibited personal and emotional communications were encouraged and acceptable and were part and parcel of the confidential relationship established between HRI and Plaintiffs.

25.     In 2020, Mr. Schroder became concerned when he learned that certain material representations made by one or more Defendants relating to Chem-Dry cleaning products, technology, services and franchisee relations were misleading and/or untrue.  Mr. Schroder

expressed these concerns to Quinlan. All the while, Mr. Schroder and HRI Agents continued to communicate with each other occasionally using expletive language.

26.     In 2020, Mr. Schroder began speaking with other Chem-Dry franchisees about his concerns with Chem-Dry. Several of these Chem-Dry franchisees expressed and shared similar and/or related concerns.

27.     There is no organized association of Chem-Dry franchisees.

28.     In 2020 Mr. Schroder began studying the value of creating a Chem-Dry franchisee association and concluded that a Chem-Dry franchisee association could strengthen the operation and efficiency of all Chem-Dry franchises. Mr. Schroder then began speaking with other Chem-Dry franchisees about organizing such an association.

29.     In 2020, Mr. Schroder discussed his intent to form a Chem-Dry franchisee with one or more of the HRI Agents. The HRI Agents, however, were displeased with the idea of a franchisee association and disclosed their displeasure to Mr. Schroder. Prior to these discussion, no HRI Agent ever complained to Mr. Schroder about his use of expletive language.

30.     In late 2020 or early 2021, Quinlan offered another Chem-Dry franchise to Mr. Schroder.  Subsequent communications between the Parties lead to Mr. Schroder being induced to enter into a second Chem-Dry franchise agreement for franchise #202042.  Prior to the parties entering into this new franchise agreement, none of the HRI Agents or any other representative of HRI had ever informed Mr. Schroder that his use (or their use) of expletive language in their communications was unacceptable, would violate any franchise agreement or would be deemed contrary to Chem-Dry franchisee conduct or relations.

6

31.     In late 2020 and early 2021, Mr. Schroder continued to explore how to establish an association of Chem-Dry franchisees. Owning an ongoing franchisee, Mr. Schroder had ready access to contact information of all Chem-Dry franchisees as well as active participation in annual Chem-Dry conferences where Mr. Schroder could speak with other franchisees.

32.     Mr. Schroder continued to actively discuss the need for an association of Chem-Dry franchisees with other franchisees and continued these discussion with various HRI Agents.

33.     Between late 2020 up to within just weeks prior to April 20, 2021, Mr. Quinlan and one or more other Defendants and/or John Does 1-10 confirmed that Hospitality and Mr. Schroder were in good standing with HRI without any claim, assertion or even comment that Mr. Schroder's language negatively impacted said good standing status and Mr. Schroder's ongoing contractual relations with HRI.

34.     Without prior notice, on April 20, 2021 HRI attempted to terminate both the Initial Franchise Agreement and the franchise agreement # 202042 (collectively the "Franchise Agreements") by written notice, stating as the basis for termination that Mr. Schroder's alleged "conduct that is incompatible with participation in a consumer-facing franchise brand." The termination notice pointed to Mr. Schroder's use of expletive language as unrespectful, unprofessional, dishonest and/or unethical. The purported termination of the Franchise Agreements was done without providing Plaintiffs any opportunity to cure Mr. Schroder's alleged conduct.

35.     Use of any expletive language by Mr. Schroder was strictly in communications with HRI Agents or other franchisee owners, and never to consumers or "consumer-facing". Moreover, Hospitality's customer rating were always and remain exemplary.

36.     HRI's purported termination of the Franchise Agreements was unlawfully based upon Mr. Schroder's attempts to organize an association of Chem-Dry franchisees.

37.     Upon said purported termination of the Franchise Agreements, Defendants cut Plaintiffs off from:

-        participation in Chem-Dry conferences to prevent Mr. Schroder from communicating with other Chem-Dry franchisees about his concerns with HRI and to organize an association of Chem-Dry franchisees;

-        use of the phone number for continuing and new customers of Chem-Dry franchises nos. 202041 and 20204;

-        access to online management of ongoing and still-to-be completed carpet cleaning contracts; and

-        all ability of  Plaintiffs to continue to use licensed software to bill and collect payment for past work contrary to the terms of the Franchise Agreements.

38.     Immediately following the notice of termination, Plaintiffs continued to offer and provide carpet and other cleaning products and services independent of the Chem-Dry franchise and brand, and informed one or more HRI Agents of these facts.

39.     Following the purported termination of the Franchise Agreements, one or more HRI Agent unfairly interfered with Plaintiffs' contractual relations.

40.     Following the purported termination of the Franchise Agreements, one or more HRI Agent defamed Plaintiffs by intentionally controlling and redirecting telephone calls directed to Mr. Schroder to one or more HRI Agent and/or DOE Defendant who in turn informed these callers seeking to reach Plaintiffs that Plaintiffs had gone out of business and/or were no

longer operating in the carpet cleaning business. These HRI Agents and/or DOE Defendants knew such statements were false.

41.    Following the purported termination of the Franchise Agreements, HRI failed to repurchase Hospitality's inventory, supplies and/or equipment as required under the Franchise Agreements and pursuant to Haw. Rev. Stat. Chapter 482E.

42.    After the purported termination of the Franchise Agreements, Plaintiffs discovered that Defendants violated the Franchise Agreements, Hawai'i law and other law by, among other things:

-    wrongfully terminating the Franchise Agreements;

-    ignoring HRI's obligations under Haw. Rev. Stat. Chapter 482E to confine litigation of disputes between a franchisor and franchisee to Hawai'i;

-    attempting to force an arbitration under the auspices of the AAA outside Hawai'i, ignoring Plaintiff's right to litigate disputes between it and HRI in Hawai'i in violation of Haw. Rev. Stat. § 482E-5(c).

-    ignoring Plaintiff's rights and remedies under Hawai'i law;

-    purportedly terminating the Franchise Agreements without providing Plaintiffs a right to cure any alleged breach of the same;

-    establishing a license for a new Dry-Chem franchise on Maui, which territory was specifically designated as the exclusive territory of Hospitality, in violation of Haw. Rev. Stat. § 482E-6(2)(E).

-    failing to honor buy-back provisions in the Franchise Agreements;

- misrepresenting and omitting material facts in Chem-Dry franchise circulars and/or disclosures;

- withholding documents required to be provided to Plaintiffs per the Franchise Agreements and other instruments;

- discriminating against Plaintiffs; and

- producing and distributing misleading promotional materials relating to Chem-Dry goods and services.

<u>COUNT 1</u>
<u>(Breach of Contract)</u>

43.     Plaintiffs re-allege and incorporate by reference the foregoing paragraphs inclusive, as though fully set forth herein.

44.     HRI's conduct as stated herein breached both Franchise Agreements.

45.     As a proximate cause of said breach, Plaintiffs have been damaged in the minimum amount of $100,000.

46.     Following its wrongful termination of the Franchise Agreements, HRI failed to remit to Hospitality any payments for the market value of Hospitality's remaining Chem-Dry inventory, supplies, and equipment.

47.     This failure, which violated the Franchise Agreements and Haw. Rev. Stat. Chapter 482E, damaged Plaintiffs in the further amount of at least $90,000, further violating the Franchise Agreements.

48.     The afore-alleged conduct of HRI was knowing, deliberate, willful, intentional, unreasonable and outrageous in all regards and as a direct and proximate cause of said conduct Plaintiffs are entitled to an award of punitive damages..

49.     In addition to the above damages, Plaintiffs are entitled to other special, general and/or compensatory damages in amounts to be proven at trial.

COUNT II
(Breach of Good Faith and Fair Dealing)

50.     Plaintiffs re-allege and incorporate by reference the foregoing paragraphs inclusive, as though fully set forth herein.

51.     The Franchise Agreement created for HRI and Hospitality a covenant of good faith and fair dealing on the part of both parties.

52.     HRI breached said covenant and fair dealing.

53.     Said breaches caused monetary harm to Plaintiffs in lost revenue in the amount of approximately $100,000 per month.

54.     The conduct of HRI in breaching the aforesaid covenants was knowing, deliberate, willful, intentional, unreasonable and outrageous in all regards and as a direct and proximate cause of said breaches, Plaintiffs are entitled to an award of punitive damages.

55.     In addition to the above, Plaintiffs are entitled to other special, general and/or compensatory damages in amounts to be proven at trial.

56.     HRI wrongfully terminated the Franchise Agreements and Plaintiffs seek reinstatement of the Franchise Agreements.

COUNT III
(Breach of Fiduciary Duty)

57.     Plaintiffs reallege and incorporate by reference the allegations contained above as through fully set forth herein.

11

58.     Plaintiffs and HRI developed a relationship of deep trust and confidence. In order to conduct the Chem-Dry business pursuant to the Franchise Agreements and Chem-Dry's policies and procedures, Plaintiffs needed to heavily rely on HRI and its personnel for advice, consulting, training and know-how.

59.     The Chem-Dry business included the cleaning of carpets, wood flooring, tile, commercial flooring, stone flooring and rugs. Plaintiffs were not only required to familiar themselves with manuals and training videos provided by HRI, but to also engage in personal training on the mainland in Logan, Utah to exacting standards of HRI, including testing to ensure that Plaintiffs met these standards.

60.     During the pandemic, Plaintiffs had to provide professional sanitization services, which also required specialized training.

61.     Under the Franchise Agreements, Plaintiffs are only authorized to use Chem-Dry products. As a Chem-Dry franchisee, Hospitality was required to market and promote only the Chem-Dry "brand", and its compliance with this requirement to uphold the Chem-Dry brand was assiduously overseen by HRI "advisors" and "technicians", the "advice" of whom Hospitality was required to rely upon and follow.

62.     HRI was therefore a fiduciary to Hospitality and owed Hospitality, among other things, the fiduciary duties of loyalty, candor, trust and good faith and fair dealing.

63.     HRI's conduct, as alleged herein, breached its fiduciary duties owed to Hospitality.

64.     As a proximate cause of said breaches, Hospitality is entitled to special, general and/or consequential damages in amounts to be proven at trial.

65.     HRI's breach of fiduciary duties owed to Hospitality was knowing, deliberate,

willful, intentional, unreasonable and outrageous in all regards and as a direct and proximate

cause thereof, HRI is entitled to an award of punitive damages.

66.     As a result of said breaches of fiduciary duties, Hospitality is entitled to an award

of special, general and consequential damages to be proven at trial.

COUNT IV
(Tortious Interference with Contractual Relations and Business Opportunity)

67.     Plaintiffs reallege and incorporate by reference the allegations contained above as

through fully set forth herein.

68.     As alleged herein, Defendants intentionally interfered with Plaintiff's business

after the purported termination of the Franchise Agreement.

69.     Said conduct was unfair and illegal and constitutes interference with contractual

relations with customers of Plaintiffs and with business opportunities of Plaintiffs.

70.     Defendants' unfair interference has caused monetary harm to Plaintiffs in lost

revenue in the amount of approximately $100,000 per month.

71.     The afore-said conduct of Defendants was knowing, deliberate, willful,

intentional, unreasonable and outrageous in all regards. As a proximate and direct result of

Defendants' conduct, Plaintiffs are entitled to an award of punitive damages.

COUNT V
(Defamation)

72.      Plaintiffs reallege and incorporate by reference the allegations contained above as

through fully set forth herein.

13

73.     The statements made by one or more of the HRI Agents and/or DOE Defendants as alleged herein to potential customers of Plaintiffs that Plaintiffs were no longer in, or had gone out of the cleaning business were false. These HRI Agents and/or DOE Defendants knew these statements were false when made, or the HRI Agents and/or DOE Defendants who made these defamatory statements committed negligence in making these statements. None of these statements were privileged.

74.     The defamatory statements published by one or more of HRI Agents and/or DOE Defendants caused actual harm to Plaintiffs in the conduct of their business and harmed Plaintiffs' professional good will and reputation, lowered then in the estimation of the community, and caused business and personal humiliation, mental anguish, and deep emotional pain and suffering, in amounts to be proven at trial.

75.     The conduct of one or more of the HRI Agents and/or DOE Defendants as described above was knowing, deliberate, willful, intentional, unreasonable and outrageous in all regards and as a direct and proximate result of said HRI Agents and/or DOE Defendants' conduct, Plaintiffs are entitled to an award of punitive damages.

COUNT VI
(Intentional Infliction of Emotional Distress)

76.     Plaintiffs reallege and incorporate by reference the allegations contained above as through fully set forth herein.

77.     The conduct of HRI, one or more of the HRI Agents and one or more DOE Defendants, was intentional and has resulted in severe emotional distress to Mr. Schroder.

78.     Said conduct has caused general and special damages to Mr. Schroder in an amount to be proven at trial

79.     Said conduct was knowing, deliberate, willful, intentional, unreasonable and outrageous in all regards and as a direct and proximate cause thereof, Mr. Schroder is entitled to an award of punitive damages.

COUNT VII
(Unfair Competition; Violations of HRS 482E and HRS 480-2)

80.     Plaintiffs reallege and incorporate by reference the allegations contained above as through fully set forth herein.

81.     The acts of one HRI as alleged herein offended established public policy and was immoral, unethical, oppressive, unscrupulous and or substantially injurious to consumers and constitute unfair competition against Hospitality within the meaning of Haw. Rev. Stat. § 480-2.

82.     The acts of HRI as alleged herein violated Haw. Rev. Stat. Chapter 482 and Haw. Rev. Stat. § 482E-6, resulting in unfair and deceptive trade practices under Haw. Rev. Stat. § 482E-9 and Haw. Rev. Stat. § 480-2.

83.     The foregoing violations by HRI resulted in substantial damages to Hospitality, which damages will be proven at trial.

84.     As a direct and proximate result of said violations by HRI, HRI is liable to Hospitality in the minimal amount of $1,000 or treble its actual damages proven at trial, plus its reasonable attorneys' fees and costs of suit.

85.     All HRI Agents and/or DOE Defendants who participated in the foregoing violations are jointly and severally liable with HRI for treble all damages proven by Hospitality at trial, together with Hospitality's reasonable legal fees and costs.

86.     The foregoing violations by HRI, and of any HRI Agent and/or DOE Defendant who particpated in said violation(s), were knowing, deliberate, willful, intentional, unreasonable

15

and outrageous in all regard and as a direct and proximate result thereof Hospitality is entitled to an award of punitive damages, to be assessed jointly and severally against all such persons.

COUNT VIII
(Conversion)

87.     Plaintiffs reallege and incorporate by reference the allegations contained above as through fully set forth herein.

88.     HRI and one or more of the HRI Agents and/or DOE Defendants converted and retained control and use over the personal property of Hospitality with the intent to retain it for their own benefit.

89.     Said conversion resulted in damages to Hospitality in an amount or amounts to be proven at trial.

90.     Said conduct was knowing, deliberate, willful, intentional, unreasonable and outrageous in all regards and as a direct and proximate cause thereof Hospitality is entitled to an award of punitive damages.

COUNT IX
(Declaratory Relief)

91.     Plaintiffs reallege and incorporate by reference the allegations contained above as through fully set forth herein.

92.     During all relevant times, Plaintiffs complied with all material terms of the Franchise Agreements.

93.     HRI wrongfully terminated the Franchise Agreements.

94.     Plaintiffs therefore seek a declaration that the Franchise Agreements were wrongfully terminated and are to be reinstated with full rights thereunder.

95.     After wrongfully terminating the Franchise Agreements, HRI initiated an arbitration of disputes it has with Plaintiffs outside the State of Hawaiʻi in an action identified as AAA No. 01-21-0004-1006. Said arbitration action is purportedly based on provisions in the Arbitration Agreements. Said provisions in the Arbitration Agreements violate Plaintiff's absolute right under Haw. Rev. Stat. § 482E-5(c) to litigate disputes between it and HRI in Hawaiʻi.

96.     Plaintiffs therefore seek a declaration the arbitration clause in the Franchise Agreement is unenforceable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that this Honorable Court grant the following relief: adjudge, declare and find against Defendant and Doe Defendants 1-20, the following:

1.     An immediate order that the pending arbitration action entitled AAA No. 01-21-0004-1006 be terminated or at a minimum stayed in favor of this action;

2.     That judgment be entered against Defendants, jointly and severally, for damages in an amount to be at least $100,000 per month since the wrongful termination of the Franchise Agreements by HRI and any HRI Agent and/or DOE Defendants participating in said termination, or in an amount to be determined at trial, which include but are not limited to compensatory, special, and general damages;

3.     That judgment include increased punitive damages for Defendants' knowing, willful, deliberate, intentional, unreasonable and/or outrageous conduct;

4.      That judgment be entered against Defendants, jointly and severally, for damages in an amount to be at least $90,000 for buy back of contract-identified supplies, equipment, vehicle and product;

5.      That alternatively Plaintiff HRI be awarded treble its actual damages;

6.      That the Franchise Agreements be reinstated in favor of Plaintiffs;

7.      That the Court award Plaintiffs their reasonable attorneys' fees and costs;

8.      That the Court award Plaintiffs pre-judgment and post-judgment interest; and

9.      That this Honorable Court grant such further and other relief as it deems just, fair, reasonable and equitable

DATED:  Kula, Hawai`i, March 24, 2022

*/S/ JACK R. NAIDITCH*

_____
JACK R. NAIDITCH
*Counsel for Plaintiffs*
HOSPITALITY FUTURE LABS, LLC and
ADAM SCHRODER

IN THE CIRCUIT COURT OF THE SECOND CIRCUIT

STATE OF HAWAIʻI

| | |
|---|---|
| HOSPITALITY FUTURE LABS, LLC and ADAM SCHRODER | CIVIL NO. |
| Plaintiff, | JURY DEMAND |
| vs. | |
| HARRIS RESEARCH, INC., DAN TARATIN, SHELDON YELLEN, RUSTY ARMARANTE, CURT ARNOLD, DOUG SMITH, ED QUINLAN, WILLIAM ZINKE, MELANIE PARKER, JOTHAM HATCH, and DOES 1-25, | |
| Defendants. | |

## **JURY DEMAND**

Plaintiffs HOSPITALITY FUTURE LABS, LLC and ADAM SCHRODER

("Plaintiffs"), by and through counsel, hereby request a trial by jury on all issues triable in this

case.

DATED:  Kula, Hawaiʻi, March 24, 2022

/S/ JACK R. NAIDITCH

_____

JACK R. NAIDITCH
*Counsel for Plaintiffs*
HOSPITALITY FUTURE LABS, LLC and
ADAM SCHRODER

| STATE OF HAWAI'I<br>CIRCUIT COURT OF THE<br>SECOND        CIRCUIT | SUMMONS<br>TO ANSWER CIVIL COMPLAINT | |
|---|---|---|
| **CASE NUMBER** | **PLAINTIFF'S NAME & ADDRESS, TEL. NO.**<br><br>Jack R Naiditch (5847)<br>PO Box 485<br>Kula HI 96790<br>(808) 283-0912 | |
| **PLAINTIFF**<br><br>HOSPITALITY FUTURE LABS, LLC and ADAM<br>SCHRODER | | |
| **DEFENDANT(S)**<br><br>HARRIS RESEARCH, INC., DAN TARATIN,<br>SHELDON YELLEN, RUSTY ARMARANTE,<br>CURT ARNOLD, DOUG SMITH, ED QUINLAN,<br>WILLIAM ZINKLE, MELANIE PARKER,<br>JOTHAM HATCH and DOES 1-25 | | |

**TO THE ABOVE-NAMED DEFENDANT(S)**

You are hereby summoned and required to filed with the court and serve upon
JACK R. NAIDITCH, PO BOX 485, KULA HI 96790 (808) 283-0912

plaintiff's attorney, whose address is stated above, an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the date of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

**THIS SUMMONS SHALL NOT BE PERSONALLY DELIVERED BETWEEN 10:00 P.M. AND 6:00 A.M. ON PREMISES NOT OPEN TO THE GENERAL PUBLIC, UNLESS A JUDGE OF THE ABOVE-ENTITLED COURT PERMITS, IN WRITING ON THIS SUMMONS, PERSONAL DELIVERY DURING THOSE HOURS.**

**A FAILURE TO OBEY THIS SUMMONS MAY RESULT IN AN ENTRY OF DEFAULT AND DEFAULT JUDGMENT AGAINST THE DISOBEYING PERSON OR PARTY.**

DATE ISSUED    MARCH 24, 2022

Effective Date of 28-Oct- 2019
Signed by: /s/ D. Pellazar Clerk,
2nd Circuit, State of Hawai`i



 If you need an accommodation for a disability when participating in a court program, service, or activity, please contact the ADA Coordinator as soon as possible to allow the court time to provide an accommodation:
Call (808) 244-2855 FAX (808) 244-2932 OR Send an e-mail to: adarequest@courts.hawaii.gov.  The court will try to provide, but cannot guarantee, your requested auxiliary aid, service or accommodation.